IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| FISKER AUTOMOTIVE HOLDINGS, INC., *et al.*, | ) |
| | ) Case No. 13-13087(KG) |
| Debtors. | ) |
| | ) **Re: Dkt. Nos. 13 & 265** |

## MEMORANDUM OPINION

### INTRODUCTION

The Court's Memorandum Opinion will address the Debtors' Motion . . . Authorizing the Sale of Substantially All of the Debtors' Assets . . . (the "Sale Motion") (D.I. 13). Also before the Court is the Motion of the Creditors' Committee . . . Approving Bid Procedures . . . (the "Bidding Procedures Motion") (D.I. 265).

The Debtors[1] were founded in 2007 with the goal of designing, assembling, and manufacturing premium plug-in hybrid electric vehicles in the United States. Debtors faced many difficulties that prevented the Debtors from operating as planned. The challenges included safety recalls related to battery packs supplied by a third party vendor, the loss of a material portion of their existing unsold vehicle inventory in the United States during Hurricane Sandy in 2012, and the loss of their lending facility provided through the United States Department of Energy ("DOE").

---

[1] The Debtors are Fisker Automotive Holdings, Inc. and Fisker Automotive, Inc.

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested are Sections 105, 363 and 265 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004 and 6006.

## UNCONTESTED FACTS

The following facts are uncontested and will describe the origination and essence of the conflict at hand.

1. The Debtors expressly filed these cases to accomplish the sale of substantially all their assets to Hybrid Tech Holdings, LLC ("Hybrid") and then to administer these chapter 11 estates through the Debtors' proposed chapter 11 plan of liquidation.

2.      As of the Petition Date, November 22, 2013, the Debtors had approximately $203.2 million in indebtedness and related obligations outstanding. As of the Petition Date, the obligations outstanding under these facilities, excluding accrued interest, were estimated at the following amounts:

|                                              | $ millions |
|----------------------------------------------|------------|
| Senior Loan Agreement (DOE)                  | 168.5      |
| Silicon Valley Bank Working Capital Facility | 6.6        |
| Delaware Economic Development Agency         | 12.5       |
| Related Party Notes                          | 15.6       |
| Total                                        | $203.2     |

3.      Debtors and the United States of America, through DOE, are parties to that certain Loan Arrangement and Reimbursement Agreement, dated as of April 22, 2010 (as amended, supplemented or otherwise modified, "Senior Loan Agreement"). Pursuant to the Senior Loan Agreement, DOE agreed to, among other things: (a) arrange for the Federal Financing Bank ("FFB") to purchase notes from Fisker Automotive in an amount not to exceed $169.3 million to fund the development, commercial production, sale and marketing, and all related engineering integration of the Debtors' "Karma" model automobile, the Debtors' premium-priced PHEV (the "Karma Lending Facility"); and (b) arrange for FFB to purchase notes from Fisker Automotive in an amount not to exceed $359.4 million to fund the development, commercial production, sale and marketing of the Debtors' "Nina" model automobile, a moderately priced version of the Karma, including the establishment and construction of an assembly and production site in the United States (the "Nina Lending Facility," and together with the Karma Lending Facility, the "Senior Loan Facility").

4. On October 11, 2013, Hybrid purchased DOE's position of outstanding principal of $168.5 million ($.15/$1.00) under the Senior Loan Facility for $25 million and, for all practicable purposes, succeeded to DOE's position as the Debtors' senior secured lender.

5. With the Senior Loan sale by DOE to Hybrid, the Debtors entered into discussions with Hybrid regarding Hybrid's potential acquisition of the Debtors' assets through a credit bid of all or part of the Senior Loan. These discussions led to the Asset Purchase Agreement, pursuant to which Hybrid proposes to acquire substantially all of the assets of Debtors for consideration which includes $75 million in the form of a credit bid. The Debtors determined that a sale to a third party other than Hybrid was not reasonably likely to generate greater value than the Debtors' proposed sale transaction or advisable under the facts and circumstances of these chapter 11 cases. The DOE Loan purchase made Hybrid the Debtors' senior secured lender holding approximately $168.5 million in claims. What collateral is thereby secured remains at issue.

6. The Debtors decided that the cost and delay arising from a competitive auction process or pursuing a potential transaction with an entity other than Hybrid would be reasonably unlikely to increase value for the estates. The Sale Motion therefore reflects Debtors' decision to sell its assets to Hybrid through a private sale.

7. The Official Committee of Unsecured Creditors (the "Committee" opposes the Sale Motion and is seeking an auction along the lines contained in the Bidding Procedures Motion. In particular, the Committee opposes Hybrid's right to credit bid. The Committee

has proposed an alternative to the Hybrid private sale: an auction with Wanxiang America Corporation ("Wanxiang").

8.  While the offers are evolving and improving, the Wanxiang proposal at the time the Sale Motion was pending was extremely attractive both economically and in its significant non-economic terms. The Committee strongly endorsed Waxiang's participation in an auction.

9.  At the hearing on January 10, 2014, at which the Court was to consider the Sale Motion and the Bidding Procedures Motion, the Debtors and the Committee announced on the record an agreement to limit the areas of dispute. The Debtors and the Committee agreed that (emphasis supplied):

### Stipulated Agreements

First, **the Debtors and the Committee agree** that, based on all the events that have transpired since the commencement of these cases, and especially the recent bid by Wanxiang, it now does appear to both parties that if Hybrid's ability to credit bid is limited as the Committee has asked, specifically that **if at any auction Hybrid either would have no right to credit bid or its credit bidding were capped at $25 million, there is a strong likelihood that there would be an auction that has a material chance of creating material value for the estate over and above the present Hybrid bid**. That auction would, of course, be open to all qualified bidders, and certainly to include Hybrid and Wanxiang and possibly others.

Second, **if Hybrid's ability to credit bid is not capped, it appears to both the Debtors and the Committee that there is no realistic possibility of an auction**, as we have no reason to believe that Wanxiang or anyone else would bid more than the amount of Hybrid's asserted secured claims.

Third, **we agree that limiting of Hybrid's ability to credit bid, for these reasons alone, would likely foster and facilitate a competitive bidding environment,** as those words were used by the Third Circuit in Philadelphia

Newspapers, and that such a competitive bidding environment would likely result in material benefit to the estate.

Fourth, all of the work here has shown to both the Debtors and the Committee that the highest and best value for the estate is achieved only in the sale of all of the Fisker assets as an entirety.

Fifth, based on all the work that has been done by all parties and a constructive and collaborative exchange of views and information as appropriate in Chapter 11, we each also believe that **within that entirety of the assets offered for sale are (i) material assets that we believe consist of properly perfected Hybrid collateral, (ii) material assets that are not subject to properly perfected liens in favor of Hybrid and (iii) material assets where there is a dispute as to whether Hybrid has a properly perfected lien,** which dispute is not likely subject to quick or easy resolution. We may not agree on exactly where those lines are drawn between those three groups in certain respects. And we may not agree as to the allocation of value between these groups in all respects. But we agree that there are material assets in each category.

* * *

As our eighth agreement, the Committee agrees that if, based on these agreements and such other evidence and argument by all parties at today's hearing consistent in respects with these agreements, **the Court rules that there is no basis to limit Hybrid's ability to credit bid as proposed, the Committee will withdraw all of its oppositions to the Debtors' present sale,** DIP loan, plan and related motions as they are currently proposed, conditioned of course on Hybrid confirming its most recent proposal still stands and is not conditioned in any respect on plan acceptance or other such formality.

Finally, Judge, as to our ninth and final agreement . . .

> Based upon the agreements reached, the Debtors and the Committee ask the Court to rule on whether Hybrid's ability to credit bid should be limited exclusively based on the Committee's positions that: (i) credit bidding should not be permitted here given that a material portion of the assets to be sold in their entirety are not subject to a property perfected lien in favor of Hybrid or are subject to lien in favor of Hybrid which is in bona fide dispute, which dispute cannot be quickly

and easily resolved or (ii) "cause" exists because limiting the credit bid will facilitate an open and fully competitive cash auction or (iii) "cause" exists because the Debtors' assets to be sold in their entirety include encumbered, unencumbered and disputed assets. The Committee will not seek a limitation on the credit bid for any other basis. To be clear, there is a disagreement between the parties on whether, as a matter of law, the Court can limit the credit bid under these circumstances. Based upon the agreements reached, the Debtors and the Committee will not present further argument or evidence on these issues, but will be able to respond to direct inquiries from the Court. Moreover, the Debtors and the Committee may also respond to oppositions to their respective positions; however, the Committee's response to an opposition by a third party shall not in and of itself constitute an opposition to the Debtors' position.

10. The Stipulated Agreements are highly significant to the credit bidding issue. If Hybrid is entitled to credit bid more than $25 million at an auction, Wanxiang will not participate - and there will be no auction.

11. Wanxiang has made it clear it is prepared to increase its bid if there is an auction.

## DISCUSSION

The Sale Motion and the Bidding Procedures Motion require the Court to determine whether Hybrid is entitled to credit bid its claim and, if so, whether the Court may properly limit, or cap, the amount that Hybrid may credit bid. If the answer to the second question, the capping of the credit bid, is "no," it is clear there will be no auction. The Committee will withdraw its objection to the Sale Motion and Hybrid will have a clear path to purchase the Debtors' assets in a private sale, subject to the Court's approval.

It is beyond peradventure that a secured creditor is entitled to credit bid its allowed claim. 11 U.S.C. § 363(k) provides that:

> (k) At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

*See Radlax Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct. 2065 (2012); *In re Philadelphia Newspapers, LLC*, 599 F.3d 298 (3d Cir. 2010). Hybrid paid $25 million for its claim. It will be entitled to credit bid. The only question is: in what amount.[2]

The law is equally clear, as Section 363(k) provides, that the Court may "for cause order[] otherwise." *In Philadelphia Newspapers*, the Third Circuit Court of Appeals captured the law as follows:

> As an initial matter, the Code plainly contemplates situations in which assets encumbered by liens are sold without affording secured lenders the right to credit bid. The most obvious example arises in the text of § 363(k), under which the right to credit bid is not absolute. A secured lender has the right to credit bid "unless the court for cause orders otherwise." 11 U.S.C. § 363(k). In a variety of cases where a debtor seeks to sell assets pursuant to § 363(b), courts have denied secured lenders the right to bid their credit. *See In re Aloha Airlines*, No. 08-00337, 2009 WL 1371950, at *8 (Bankr.D.Hawaii May 14, 2009) (determining that "cause exists to deny the credit bid" under § 363(k); *Greenblatt v. Steinberg*, 339 B.R. 458, 463 (N.D.Ill.2006) (holding the "bankruptcy court did not err in refusing to allow [a secured creditor] to credit bid"); *In re Antaeus Technical Servs., Inc.*, 345 B.R. 556, 565 (Bankr.W.D.Va.2005) (denying the right to credit bid to facilitate "fully competitive" cash auction); *In re Theroux*, 169 B.R.

---

[2] The Committee argues Hybrid should not be permitted to credit bid at all, or in any event no more than the $25 million it paid for the $168.5 million claim Hybrid purchased from DOE. Hybrid insists on credit bidding $75 million.

498, 499 n. 3 (Bankr.D.R.I.1994) (noting that 'there is no absolute entitlement to credit bid").[FN14]

> FN14. The Lenders argue that the "for cause" exemption under § 363(k) is limited to situations in which as secured creditor has engaged in inequitable conduct. That argument has no basis in the statute. A court may deny a lender the right to credit bid in the interest of any policy advanced by the Code, such as to ensure the success of the reorganization or to foster a competitive bidding environment. *See*, *e.g.*, 3 Collier on Bankruptcy 363.09[1] ("the Court might [deny credit bidding] if permitting the lienholder to bid would chill the bidding process.").

*Philadelphia Newspapers*, 599 F.3d at 315-16.

The evidence in this case is express and unrebutted that there will be no bidding - not just the chilling of bidding - if the Court does not limit the credit bid. The Committee, which strongly opposes any credit bidding by Hybrid, will abandon its opposition to the Sale Motion if there is no auction - and there will be no auction if the credit bid is not capped. It is through the Committee's efforts that Wanxiang is now prepared to bid. Waxiang is also prepared to increase its offer in an auction.

Wanxiang is a highly attractive and capable participant. Wanxiang recently purchased in bankruptcy, through an auction, certain assets of A123 Systems[3] for almost $300 million, most importantly, the primary component of the Fisker electric cars, which is the lithium ion battery. This means that Wanxiang has a vested interest in purchasing Fisker.

Thus, the "for cause" basis upon which the Court is limiting Hybrid's credit bid is that bidding will not only be chilled without the cap; bidding will be frozen.

---

[3] The bankruptcy case is *In re B456 Systems, Inc. (f/k/a A123 Systems, Inc)*, Case No. 12-12859 (Bankr.D.Del. 2013)(KJC). The Sale Order is at Docket No. 640.

Hybrid if unchecked of its purchase, might well have frozen out other suitors for Fisker's assets. Debtors filed these cases on Friday, November 22, 2013, a mere three business days before the Thanksgiving holiday, and insisted that the Sale Motion and confirmation hearings occur not later than January 3, 2014, i.e., immediately after the New Year holiday[4]. The schedule therefore allowed only 24 business days for parties to challenge the Sale Motion and even less time for the Committee, which was not appointed until December 5, 2013, to represent the interests of unsecured creditors. Neither Debtors nor Hybrid, when the Court asked, ever provided the Court with a satisfactory reason why the sale of the non-operating Debtors required such speed. Nor did Debtors or Hybrid respond to the Court's repeated admonition that the timing of the Sale Motion was troublesome. It is the Court's view that Hybrid's rush to purchase and to persist in such effort is inconsistent with the notions of fairness in the bankruptcy process. The Fisker failure has damaged too many people, companies and taxpayers to permit Hybrid to short-circuit the bankruptcy process.

Finally, the Committee has raised concerns that the amount of Hybrid's secured claim is uncertain. In their Stipulated Agreements, the Debtors and the Committee agree that Hybrid's claim is partially secured, partially unsecured and of uncertain status for the remainder. Hybrid argues that under case law in this Circuit, Hybrid is yet entitled to credit bid its entire claim. Hybrid cites *In re Submicron Systems Corp.*, 432 F.3d 448 (3d Cir.

---

[4] It is now clear that Hybrid's "drop dead" date of January 3, 2014, was pure fabrication, designed to place maximum pressure on creditors and the Court. Today is January 17, 2014. Hybrid is still working to acquire Debtors' assets.

2006). In *Submicron* the issue was not the classification of the claim but the value of the collateral the claim secured. The Court of Appeals held that although the secured debt had no actual/economic value, the secured creditor was nonetheless entitled to credit bid its entire secured claim. The *Submicron* facts are distinctly different than the facts here. In *Submicron* the classification of the claim to be credit bid was clear. The claim was secured, albeit the secured collateral was deficient as to the entirety of the claim. But here we do not yet know how much of Hybrid's claim is secured. The law leaves no doubt that the holder of a lien the validity of which has not been determined, as here, may not bid its lien. *In re Danfuskie Isl. Props., LLC*, 441 B.R. 60 (Bankr. D.S.C. 2010). *Submicron* addresses an allowed claim. No one knows how much of the claim Hybrid purchased from DOE will be *allowed* as a secured claim.

## CONCLUSION

As discussed, the Court will limit, for cause, Hybrid's credit bid to $25 million. To do otherwise would freeze bidding. Hybrid as the proposed sale purchaser insisted on an unfair process, i.e., a hurried process, and the validity of its secured status has not been determined. In reaching its decision, the Court has followed precedent. A decision to authorize an uncapped credit bid under the facts of this case would be unprecedented and unacceptable. An Order will issue.

Dated: January 17, 2014

KEVIN GROSS, U.S.B.J.